### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

**UNITED STATES OF AMERICA**

        **Plaintiff,**

**-vs-**                                                       **Case No. 3: 7-cr-37**

**GERARDO BONILLA**

        **Defendant.**

---

### ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
### (DOC. #19)

---

This matter comes before the Court pursuant to Defendant's Motion to Suppress (Doc. #19) filed May 15, 2007, at which time the Government offered testimony from Montgomery County Deputy Gerald Bemis, including a video of the traffic stop, marked and admitted into evidence as Government's Exhibit #1. The Defendant offered testimony through Ohio State Trooper Richard Barrett. Subsequent to the hearing, the Defendant filed a Memorandum in Support of his Motion (Doc. #26) on August 27, 2007 with the Government filing a response (Doc. #30) on September 24, 2007 and the Defendant filing a Reply (Doc. #31) on October 4, 2007.

Defendant's Motion requests that this Court suppress all evidence obtained as a result of the stop and detention of the Defendant on February 24, 2007. Specifically, the Defendant asserts that he was stopped without probable cause to believe that a traffic violation occurred and/or that Defendant was unlawfully seized longer than necessary to issue him a traffic citation without reasonable suspicion that he was engaging in illegal activity.

For the most part the facts are not disputed. Trooper Richard Barrett of the Ohio State Highway Patrol was in a marked white Chevy Tahoe parked at a paved cross over on I-70 observing eastbound traffic in Preble County, Ohio near mile marker 4 (Tr. 87). Trooper Barrett

observed the Defendant in a Chevy Avalanche driving in the far right lane of I-70 just before mile marker 4 (Tr. 89).  He testified he observed the vehicle and estimated it was traveling 5 to 10 miles below the posted speed limit of 65 m.p.h. and that the driver was sitting very stiff in his seat (Tr. 94-95).  Because of these observations, the trooper testified he followed Defendant's vehicle and checked its registration through LEADS while further observing Defendant's driving.

On several occasions Trooper Barrett pulled alongside Defendant's vehicle at which time he appeared "stiff" and "scared to death".  Through his observations, Trooper Barrett had concluded that there was illegal activity going on and wanted to stop the vehicle to investigate further (Tr. 104-105).  During the entire time of this observation, for approximately 16 miles, Trooper Barrett indicated he observed no traffic violations.  Trooper Barrett then called Montgomery County Deputy Bemis on his cell phone, informing Bemis of his location and his observations (Tr. 111).

Deputy Sheriff Gerald Bemis was in a marked cruiser at mile marker 20 on I-70.  Bemis testified that he was told by Trooper Barrett to be on the lookout for the Avalanche because Barrett had observed what he considered suspicious behavior and felt strongly that something was wrong. (T. 54-55).

Bemis testified he then pulled out and followed the Defendant after the Avalanche passed.

At the 21 mile marker, Bemis testified he observed the Avalanche follow too close to a blue Saturn that was merging onto the ramp (Tr. 57).  Bemis estimated the Defendant was only one car length behind the Saturn which he indicated constituted a traffic violation (Tr. 58).  Bemis continued to follow Defendant until he again observed Defendant one car length behind a vehicle, this time a tractor trailer (Tr. 13).  Bemis effectuated a traffic stop.

Bemis upon approaching the Avalanche informed Defendant he was stopped for following too close to the tractor trailer (Gov't Exhibit 1).  Bemis spoke briefly with Defendant and the passenger, while running Defendant's license.  After talking with the passenger, Bemis called for back up and continued to process the citation.  Upon backup arriving, Bemis ran his dog, Kain, around the Defendant's vehicle at which time Bemis testified Kain alerted.

Defendant was asked to drive the vehicle to the Ohio Highway Patrol post where the vehicle was searched, cocaine discovered and the Defendant was arrested for drug possession (Tr. 76) in addition to being charged with the traffic violation of traveling too close (Tr. 76-77).

Based upon the evidence presented to the Court, the Defendant was not stopped by Trooper Barrett because he observed no traffic violations. This even in light of the fact that he was suspicious of the vehicle and the driver. As pointed out by both counsel "the decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996) Trooper Barrett appeared to have a great deal of suspicion, but no traffic violation. Trooper Barrett made no stop. However, Trooper Barrett relayed his suspicions to Deputy Bemis who on two separate occasions indicated he observed the Defendant's vehicle within one car length of the vehicle in front of him. In *United States v. Ferguson*, 8 F 3d 385, 391 (6th Cir. 1993) (en banc) cert. denied 513 U.S. 828 (1994) the Court did state that "we hold that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." The fact that these officers, Barrett and Bemis, both had ulterior law enforcement objectives, such as to investigate possible drug activity, is constitutionally irrelevant. *Whren* at 813-14.

This Court has no reason to question Deputy Bemis's conclusion that the Defendant had violated the traffic laws on two (2) separate occasions, justifying this stop.

As to the duration of the traffic stop, the Court finds the time expended reasonable. Upon completion of the traffic stop, the officer may not "further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention. *United States v. Mesa*, 627 3d 159, 162 (6th Cir. 1995). Deputy Bemis testified that shortly after his encounter with the Defendant, he requested an assist officer specifying the nearest available. Deputy Bemis talked with both Defendant and the passenger, ran licenses and processed paperwork prior to the backup officers arriving.

The Court would also agree that the answers given by Defendant and the passenger in response to the deputies' questions could have given him cause to be reasonably suspicious, in light of the observations that were related to him by Trooper Barrett. Although it is argued that any of these observations, responses or actions separately could be considered minimal and unimportant, this deputy's obligation is to conduct this and any stop with the least intrusive means reasonably available to verify or dispel any suspicions he may have in a short period of time. As the Court previously indicated, the time expended was reasonable especially in light of the

suspicions that the deputy developed based upon the totality of the circumstances.  The totality of the circumstances analysis does prohibit the Court in discounting factors merely because, separately, they could have an innocent explanation.  *United States v. Arvizu*, 534 U.S. 266, 267 (2002).

Finally, the use of a well-trained drug sniffing dog that is brought to the scene within a reasonable period after the initial traffic stop is permissible of determining whether the police are correct to suspect that the occupant was in possession of narcotics.  *United States v. Davis*, 430 F.3d 345, 355 (2005); see also *Illinois v. Caballas*, 543 U.S. 405 (2005).  The Court finds this was the case here.

Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

October 18, 2007                             **s/THOMAS M. ROSE**


_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE